IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PETER L. WORTH,

     **Plaintiff,**

                                      **Civil Action 2:20-cv-4620**

     **v.**                               **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL SECURITY,

     **Defendant.**

## OPINION AND ORDER

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). The parties have consented to jurisdiction pursuant to 28 U.S.C. § 636(c). (ECF No. 16.) This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 14). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's non-disability determination.

## I.     BACKGROUND

Plaintiff filed an application for SSI and DIB in December 2017, alleging that he became disabled on November 11, 2016. (R. at 200–05, 206–12.) Plaintiff's application was denied initially in May 2018, and upon reconsideration in September 2018. (R. at 68–78, 79–88, 91–101, 102–112.) A video hearing was held on November 5, 2019, before an Administrative Law Judge ("ALJ"), who issued an unfavorable determination on December 13, 2019. (R. at 34–67,

16–18, 19–35.)  The Appeals Council declined to review that unfavorable determination, and

thus, it became final.  (R. at 1–6.)

Plaintiff seeks judicial review of that final determination.  He alleges that the ALJ's

residual functional capacity[1] ("RFC") determination is not supported by substantial evidence.

Specifically, Plaintiff contends that the ALJ erred when considering medical opinion evidence.

(ECF No.17, at PageID 509–14.)  Plaintiff's allegation of error lacks merit.

## II.     THE ALJ DECISION

The ALJ issued her decision on December 13, 2019, finding that Plaintiff was not

disabled within the meaning of the Social Security Act.  (R. at 7–25.)[2]  At step one of the

---

[1] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."  20 C.F.R. § 4040.1545(a)(1).

[2] The ALJ's decision is undated, but the Appeals Council's Notice determination indicates that it was issued on December 13, 2019.  (R. at 1.)

sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since November 11, 2016, the alleged date of onset. (R. at 13.) At step two, the

ALJ found that Plaintiff had the following severe impairments: 1) obesity; 2) migraines; and 3)

cellulitis and meralgia parethetica. (*Id*.) At step three, the ALJ found that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) Before proceeding to

step four, the ALJ determined Plaintiff's RFC, as follows:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform sedentary work as defined
> in 20 C.F.R. 404.1567(a) and 416.967(a) except that the claimant can only
> occasionally operate foot controls with his feet bilaterally. The claimant can
> occasionally reach overhead with his upper extremities bilaterally. The claimant
> can never climb ladders, ropes or scaffolds and can only occasionally climb ramps
> or stairs. The claimant can occasionally stoop, kneel, crouch or crawl. The

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*,
475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and
answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the
criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his
or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual
functional capacity, can the claimant perform other work available in the national
economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264
(6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> claimant can never work at unprotected heights and can never operate a motor
> vehicle. The claimant can work around moving mechanical parts frequently and he
> can tolerate moderate noise levels. The claimant is limited to semi-skilled work.

(R. at 14.) At step four, the ALJ relied on testimony from a vocational expert ("VE") to

determine that Plaintiff could perform his past relevant work as an order clerk because that job

did not require duties precluded by his RFC. (R. at 20.) The ALJ therefore concluded Plaintiff

was not disabled under the Social Security Act. (*Id*.)

### III. RELEVANT RECORD EVIDENCE

**A. Plaintiff's Testimony**

At the November 5, 2019 video conference, Plaintiff, who was represented by counsel,

testified to the following. Plaintiff was unable to drive because his lymphedema prevented him

from getting behind a steering wheel. (R. at 42–43.) He last worked for U-Haul as a customer

service representative answering phone calls, but he could no longer work because he had to

elevate his feet as high as possible and that became a "deal breaker" during job interviews. (R. at

43–44.) Plaintiff had to elevate his feet "constantly" which he defined as putting his legs above

his heart 15 minutes of every hour "like [his] doctor said." (R. at 45.) Plaintiff kept his legs

elevated for 15 to 20 minutes at a time. (R. at 55.) Elevation relieved the swelling a little bit, but

more importantly, kept it from getting worse. (*Id*.) Plaintiff was prescribed furosemide and

spironolactone, which helped somewhat with his edema. (R. at 44–45.) His medications kept

his edema from getting worse but did not make it better. (R. at 45.) Taking his edema

medications as prescribed caused him to need to go to the bathroom once or twice an hour. (*Id*.)

Plaintiff used to be more mobile but was less so now because of swelling from lymphedema. (R.

at 46.) Swelling in his scrotum and feet prevented him from wearing normal pants and socks.

(R. at 55.)

Plaintiff had back issues from a high school injury but had not been able to get an MRI because he could not afford one. (R. at 46.) Plaintiff also had bad cartilage in his right knee from being tackled by a high school bully. (R. at 52.) He had pain in his left kneecap from being kicked. (R. at 53.) Plaintiff had a bad shoulder, tendonitis in his elbows, and tightness in his hands. (R. at 56, 57.) He could grab larger items like doorknobs but had trouble with smaller items like screws, bolts, and zippers. (R. at 57.) Plaintiff had a pinched nerve that caused pain in an oval shaped area on his thigh when he laid down. (R. at 53.) He had difficulties sleeping and that made him tired all the time. (R. at 54.) Plaintiff also had migraines that had begun escalating in severity. (R. at 49.) On average, his migraines lasted from one-to-three days, but bad ones could last up to a week. (R. at 49–50.) Plaintiff had been prescribed Imitrex four or five months prior to the hearing for his migraines, which is when they had begun "ramping up." (*Id*.) The Imitrex made his migraines not quite as bad. (R. at 51.) Lack of insurance had prevented Plaintiff from getting a lot of the medical treatments that he needed. (R. at 59.)

**B. Medical Records**

### 1. Treatment Records Prior to the Alleged Onset Date (November 11, 2016)

The record contains documents from Arndt Chiropractic. (R. at 375–78.) The notes from this provider are largely illegible but they appear to indicate that Plaintiff sought chiropractic care from 2013 until 2015. (*Id*.)

On February 22, 2016, Plaintiff sought treatment from Dr. David Klein. (R. at 303.) Plaintiff reported that he had cellulitis on the back of his calves for two to three weeks that had been unsuccessfully treated with oral and topical antibiotics. (*Id*.) He also complained of upper respiratory problems. (*Id*.) Dr. Klein noted Plaintiff's BMI was 74.16 and he counseled him about his weight. (*Id*.) Upon examination, Dr. Klein found that Plaintiff's skin was positive for

rash.  (R. at 304.)  Plaintiff also had extensive brawny swelling on the back of both calves with knobby texture and an irregular elevation with drainage on the left calf.  (*Id*.)  Dr. Klein diagnosed with cellulitis of the lower left extremity, morbid obesity, and bronchitis.  (*Id*.)  Dr. Klein prescribed more oral and topical antibiotics.  (R. at 304–05.)

Dr. Klein also referred Plaintiff to Genesis Wound Care, where he was treated by Dr. Skrobot from March 2, 2016, until March 23, 2016.  (R. at 314.)  At Genesis Wound Care, Plaintiff indicated that he rarely had pain but that when he did, he took ibuprofen and that was effective. (R. at 403.)  Plaintiff related that he was not able to be admitted to the hospital because he worked from home as a U-Haul personnel phone operator.  (R. at 408.)  Upon examination, Plaintiff had pedal pulses ¼ bilaterally and edema in both extremities.  (R. at 404.)  He also had decreased range of motion and minimally decreased strength but no significant deep calf pain. (R. at 409.)  Plaintiff was prescribed Medrol.  (R. at  406.)  Plaintiff was instructed to control his edema by using spandagrip on his lower bilateral extremities, avoiding prolonged standing, and elevating his legs to heart level or above for 30 minutes daily and/or when sitting.  (R. at 390, 405, 422, 426.)  Dr. Skrobot discussed with Plaintiff leg elevation and weight loss.  (R. at 409.) At a final appointment on March 23, 2016, it was noted that Plaintiff was doing well, and he was instructed to bathe as usual, apply cream to his legs daily, walk as much as possible, and to elevate his legs when sitting.  (R. at 447–48, 439.)

Plaintiff followed up with Dr. Klein on March 9, 2016.  Plaintiff reported that his upper respiratory infection was getting better and that his wound was healing well.  (R. at 306.)  Dr. Klein again counseled Plaintiff about his elevated BMI (74.11).  (*Id*.)  Plaintiff was diagnosed with GERD and morbid obesity.  (R. at 307.)

On April 13, 2016, Plaintiff sought treatment from Dr. Klein for an UTI. (R. at 308–09.) Dr. Klein counseled Plaintiff again about his elevated BMI (72.71). (R. at 308.) Upon examination, Plaintiff's skin was warm and dry. (R. at 309.)

On May 30, 2016, Plaintiff returned to Dr. Klein for a check-up and medication refill. (R. at 310.) He was counseled again about his elevated BMI (75.73). (R. at 310.) Plaintiff tested positive for mild depression on a screen. (*Id*.) Upon examination, Plaintiff had edema, but his skin was warm and dry. (R. at 311.) He was diagnosed with pedal edema, cellulitis of the left lower extremity, and morbid obesity. (*Id*.) Dr. Klein ordered metabolic and lipid panels for Plaintiff's pedal edema and prescribed furosemide and spironolactone for Plaintiff's cellulitis. (*Id*.)

### 2. Treatment Records After the Alleged Onset Date (November 11, 2016)

On May 30, 2017, Plaintiff had a check-up appointment with Dr. Klein. Dr. Klein counseled Plaintiff about his elevated BMI (75.73). (R. at 310.) Plaintiff tested positive for mild depression on a depression screen. (*Id*.) Upon examination, Plaintiff exhibited edema, but his skin was warm and dry. (R. at 311.)

Records dated June 28, 2018, indicate that Plaintiff saw Dr. Klein on June 28, 2018, to discuss disability. (R. at 333.) Plaintiff reported that he had been denied disability. (*Id*.) He also reported that he had chest congestion for two weeks that had been treated with a Z pack via telemedicine, but that his cough occasionally persisted. (*Id*.) Dr. Klein counseled Plaintiff about his elevated BMI (74.2). (*Id*.) Plaintiff tested positive for mild depression on a screen. (*Id*.) Upon examination, Plaintiff's scrotum was enlarged to 20cm but it was not edematous. (R. at 334.) His skin was warm and dry, but he had 3+ edema of both lower legs with moderate

erythema. (*Id.*) The back of his calves also had some skin scabbing without drainage. (*Id.*) Dr. Klein also referred Plaintiff to physical therapy. (R. at 338.)

On July 10, 2018, Plaintiff attended and received an evaluation for disability at Genesis Healthcare Systems. (R. at 350.) That evaluation was performed by Physical Therapist Jacqueline Tom, who filled out a Physical Medical Source Statement. (R. at 351–54.) In that document, PT Tom wrote that Plaintiff could stand/walk less than two hours and sit for at least six hours in an eight-hour workday. (R. at 352.) She further wrote that Plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking; included 60 minutes of walking during every eight-hour workday; and that Plaintiff needed to walk for 15 minutes at a time. (*Id.*) PT Tom also wrote that Plaintiff would also need to take unscheduled 15-minute breaks every 60 minutes because of fatigue and pain/paresthesias, numbness. (*Id.*) PT Tom indicated that per Plaintiff's report from his previous family doctor, Plaintiff would need to elevate his legs to heart level with prolonged sitting and that if Plaintiff had a sedentary job, he would need to elevate his legs 50% of the working day. (R. at 353.) PT Tom also indicated that Plaintiff could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 25 pounds or more. (*Id.*) In addition, she wrote that Plaintiff could rarely twist, stoop, crouch/squat, or climb stairs, and could never climb ladders. (*Id.*) PT Tom further indicated that Plaintiff could spend only 50% of an eight-hour workday doing the following: grasping, turning, or twisting objects; fine manipulations; reaching in front; and reaching overhead. (*Id.*) PT Tom estimated that Plaintiff was likely to be off task 25% of the time. (R. at 354.) The document did not contain any physical examination notes or results. (R. at 350–54.)

On July 12, 2018, Dr. Klein signed the Physical Medical Source Statement that had been completed by PT Tom. (R. at 340–43.)

8

On September 4, 2018, Plaintiff followed up with Dr. Klein about swelling in his scrotum and legs. (R. at 364.) Plaintiff reported that he believed that swelling had gone down "a little bit." (R. at 364.) Plaintiff also reported that he had mistakenly been taking his medication once a day instead of twice a day as prescribed. (*Id*.) Dr. Klein counseled Plaintiff about his elevated BMI (76.36). (*Id*.) Plaintiff scored positive for moderately severe depression on a depression screen. (*Id*.) A follow-up plan for depression was discussed but Plaintiff declined an offer for a referral. (*Id*.) Upon examination, Plaintiff exhibited edema, but his skin was warm and dry. (R. at 365.)

On December 7, 2018, and June 14, 2019, Plaintiff treated with Dr. Klein again. In December, he reported getting dizzy after taking blood pressure medications and when he was "stressed out." (R. at 366.) In June, Plaintiff reported insomnia and that he was in the middle of the disability process. (R. at 368.) At both visits, Dr. Klein counseled Plaintiff about his elevated BMI (75.07 and 78.1). (R. at 366, 370.) Plaintiff was negative for depression on screens. (*Id*.) Upon examination, he had no cervical adenopathy. (R. at 367, 371.) His skin was also warm and dry. (*Id*.)

### 3. Assessment from State Agency Consultative Examiners and Reviewers

Plaintiff was consultatively examined by Dr. Ellen Offutt on May 21, 2018. (R. at 316–24.) Plaintiff indicated that he was disabled due to "swollen legs." (R. at 316.) Dr. Offutt wrote that Plaintiff was extremely morbidly obese at 660 pounds. (R. at 319.) She further noted that Plaintiff was supposed to be wrapping his legs with ACE bandages but that his legs were not wrapped correctly and that she believed that he needed better wrappings. (*Id*.) Dr. Offutt observed that Plaintiff had no cellulitis or ulcerations at that time and that his skin was intact. (*Id*.) Dr. Offutt wrote that Plaintiff "was quite mobile," and that although he walked with a

9

broad-based gait, that was due to his morbid obesity. (*Id*.) Dr. Offutt also noted that Plaintiff could not bend over well because of his huge abdomen, but that he was "quite flexible," and she believed that he could carry normal amounts. (*Id*.) He was also flexible in the amount he could squat, was able to squat down easily to pick things up, and he had good strength in his legs. (*Id*.) Plaintiff had no limitations on stairs or in the amount that he could walk. (*Id*.) He could not, however, get down on the floor and crawl or climb a ladder due to his size. (*Id*.) Although Plaintiff indicated that he had some issues with his back, Dr. Offutt noted that she saw nothing in Plaintiff's medical records and believed that he had no back-related limitations in the absence of any medical records to the contrary. (*Id*.) Dr. Offutt opined that Plaintiff's ability to perform work-related activities such as bending stooping, lifting, walking, crawling, squatting, carrying, and travelling as well as pushing and pulling heavy objects was "at least mildly to moderately impaired." (*Id*.)

Plaintiff's file was reviewed at the initial level by Theresa March, D.O. on May 26, 2018. (R. at 74–76, 85–86.) Dr. March found that Plaintiff could perform medium work (i.e., that Plaintiff could occasionally lift 50 pounds; frequently lift 25 pounds; stand and/or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday). (R. at 74, 85.) Dr. March also found that Plaintiff could frequently stoop and crouch; occasionally climb ramps/stairs, kneel, and crawl; and never climb ladders, ropes, and scaffolds. (R. at 74–75, 85–86.) Dr. March last found that Plaintiff needed to avoid unprotected heights. (R. at 75, 86.)

Plaintiff file was reviewed at the reconsideration level by Stephen Sutherland, M.D. (R. at 97–99, 108–110.) Dr. Sutherland found that Plaintiff was capable of light work (i.e., that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; stand and/or walk four hours in an eight-hour workday; and sit six hours in an eight-hour workday). (R. at 97, 108.) Dr.

Sutherland also found that Plaintiff could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds. (R. at 97–98, 108–09.) Dr. Sutherland further found that Plaintiff needed to avoid unprotected heights. (R. at 98, 109.)

## IV.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits

or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously explained, Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred when considering medical opinion evidence. Plaintiff specifically challenges the ALJ's evaluation of the Medical Source Statement that was completed by PT Tom and signed by Dr. Klein in July 2018.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements."  §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).  Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered.  §§ 404.1520c(b)(2); 416.920c(b)(2).  And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so.  *Id*.  If, however, an ALJ "find[s] that two or more medical opinions . . .  about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . "  §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually.  §§ 404.1520c(b)(1); 416.920c(b)(1).  Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate."  *Id.*

In this case, the ALJ analyzed the Medical Source Statement and concluded that it was not persuasive.  The ALJ wrote:

> The undersigned has considered the opinions provided by Physical therapist Jacqueline Tom on July 10, 2018 and signed by Dr. David Klein on July 12, 2018 . . . .  The undersigned finds their opinions are not persuasive as they are not well supported and are inconsistent with the medical evidence.  The opinion completed by Ms. Tom and endorsed by Dr. Klein provided no narrative explanation in support of their opinions other than identifying the claimant's diagnoses . . . .  In addition, while the opinion was allegedly based on an exam performed by Ms. Tom, there is no report from that exam in the record . . . .  In addition, while Dr. Klein endorsed the opinion, it is not well supported by his own treatment notes.  While the opinion indicated that the claimant could only use his arms and hands for fifty percent of a typical workday, none of the exams performed by Dr. Klein showed any abnormalities in the claimant's upper extremities and there is no indication in his treatment notes that the claimant reported any issues with his upper extremities . . . .  In addition, while Dr. Klein endorsed the opinion

> that the claimant needed to elevate his legs for fifty percent of the day, there is no indication in the record that he instructed the claimant to elevate his legs during the day in his treatment notes . . . .  Their opinion is also inconsistent with the medical evidence.  Ms. Tom and Dr. Klein indicated that the claimant could never lift more than ten pounds and only rarely twist, stoop, crouch and climb stairs . . . .  However, the exams in the record showed no motor strength deficits and while his consultative exam showed a reduced range of motion in his lumbar spine due to his large abdomen, no other limitations were noted in his movement and Dr. Ellen Offutt noted he was "quite mobile" despite his body habitus . . . .  Therefore, the undersigned finds their opinions are not persuasive.

(R. at 18.)

The Court finds no error with the ALJ's consideration and assessment of the Medical Source Statement provided by PT Tom and signed by Dr. Klein.  PT Tom was not an acceptable medical source.  20 C.F.R. § 404.1513(a); 404.1502.  But Dr. Klein signed the document, and thus, he adopted the statements therein as his medical opinions.  *Hargett v. Comm'r. of Soc. Sec.*, 964 F.3d 546, 554 (6th Cir. 2020).  Accordingly, the ALJ was required to consider all five regulatory factors and explain how the supportability and consistency factors were considered.  As the discussion above demonstrates, the ALJ did just that.

Moreover, the ALJ's supportability assessment was supported by substantial evidence.  The ALJ found that the opinions lacked support because the Physical Medical Source Statement contained no narrative explanation in support of the opined limitations.  (R. at 18.)  That accurately describes the Physical Medical Source Statement, which consisted of a form that had not been filled out completely, including that the response to a question asking the person completing the form to "[i]dentify the clinical findings and objective signs" had been left blank.  (R. at 340.)  It is well-settled that an ALJ does not err by discounting medical opinions where a medical source simply completes a check-box form, provides no explanation for restrictions, and cites no supporting objective evidence.  *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th

Cir. 2016); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474–75 (6th Cir. 2016). Such is the case here.

Plaintiff acknowledges that the Physical Medical Source Statement lacks a narrative explanation for the opined limitations. (ECF No. 17, at PageID #512.) Plaintiff urges, however, that the ALJ was obligated to recontact Dr. Klein with any questions about the opined limitations. (*Id.* citing 20 C.F.R. § 404.1520b(b)). The regulations, however, indicate that the Social Security Administration "*may* recontact your medical source" when medical evidence is inconclusive or insufficient. 20 C.F.R. § 404.1520b(b)(2)(i), 416.920b(b)(2)(i) (effective March 27, 2017) (emphasis added). Courts have concluded that the "duty to recontact is now permissive, rather than mandatory." *Glover v. Comm'r of Soc. Sec.*, No.1:16–cv–84, 2016 WL 7638142, at *8 (N.D. Ohio Dec. 22, 2016) (collecting cases).

In any event, the ALJ's other reasons for finding supportability lacking were supported by substantial evidence. The ALJ also found that supportability was lacking because the limitations were allegedly based on an examination done by PT Tom, but the record contained no reports from that examination. (R. at 18.) That accurately describes the record, which is bereft of any notes from Pt Tom's examination. The ALJ further found that supportability was lacking because it was opined that Plaintiff could only use his arms and hands for 50 percent of the day, but Dr. Klein's treatment notes do not reflect that he found any abnormalities in Plaintiff's upper extremities when he examined Plaintiff or that Plaintiff reported upper extremity issues. (R. at 18.) That too, accurately describes Dr. Klein's treatment notes. The ALJ further found that supportability was lacking because it was opined that Plaintiff needed to elevate his legs for 50% of the working day but Dr. Klein's treatment notes do not indicate that he ever advised Plaintiff to elevate his legs. (R. at 18.) That also accurately depicts Dr. Klein's notes. Although the

record contains notes from Dr. Skrobot, who treated Plaintiff for cellulitis before his alleged date of onset, and Dr. Skrobot advised Plaintiff to elevate his legs for 30 minutes daily or when sitting at that time (R. at 390, 405, 409, 422, 426, 439, 448), none of Dr. Klein's notes indicate that Dr. Klein ever offered such advice.  Nor does the record reflect that any care provider offered such advice after Plaintiff's alleged date of onset or after Plaintiff's cellulitis had healed.

In addition, the ALJ's consistency assessment was supported by substantial evidence. The ALJ found that consistency was lacking because even though it was opined that Plaintiff could never lift more than ten pounds and only rarely twist, stoop, crouch and climb stairs, physical examinations never found any motor deficits.  (R. at 18.)  That accurately describes the record evidence.  Moreover, and as the ALJ noted, the consultative examination done by Dr. Offutt in May 2018, noted only reduced range of motion in Plaintiff's lumbar spine due to the size of his abdomen.  (R. at 18, 318, 319.)  And indeed, Dr. Offutt found that Plaintiff was "quite mobile," "quite flexible;" he had 5/5 strength in his upper and lower extremities; and he had no limitations on stairs or in the amount that he could walk.  (R. at 319, 321.)  Plaintiff was also flexible in the amount he could squat, was able to squat down easily to pick things up, and he had good strength in his legs.  (R. at 321.)

In sum, the Court concludes that the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements and that the ALJ's supportability and consistency analysis was supported by substantial evidence.  Although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors IS **OVERRULED** and the Commissioner's non-disability determination is **AFFIRMED**.

**IT IS SO ORDERED.**

_/s/ Chelsey M. Vascura_____
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE